# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**KIEASE BECNEL**                                         **CIVIL ACTION**

**VERSUS**

**DEPARTMENT OF SOCIAL SERVICES,**
**OFFICE OF COMMUNITY SERVICES,**                **NO. 09-988-B-M2**
**ET AL**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, May 20, 2011.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIEASE BECNEL** | **CIVIL ACTION** |
| **VERSUS** | |
| **DEPARTMENT OF SOCIAL SERVICES,**<br>**OFFICE OF COMMUNITY SERVICES,** | **NO. 09-988-B-M2** |
| **ET AL** | |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion for Summary Judgment (R. Doc. 46) filed by the defendants, Department of Social Services, Office of Community Services ("OCS"); Brent Villamarette, in his individual and official capacities; Peggy Dottery, in her individual and official capacities; and Deborah Tanner, in her individual and official capacities (collectively "defendants"). The plaintiff, Kiease Becnel ("Becnel"), has filed an opposition (R. Doc. 56) to defendants' motion, in response to which defendants have filed a reply memorandum (R. Doc. 58).

## FACTUAL & PROCEDURAL BACKGROUND

Becnel was hired by OCS on September 5, 2006. She initially worked in a one-year probationary appointment as an Administrative Assistant 2 in the Clerical Section. Becnel's immediate supervisor, while she was working in that position, was Patricia Woodensen, who was later replaced by James Smith ("Smith"). Smith's direct supervisor was defendant, Peggy Dottery ("Dottery"), and Dottery's immediate supervisor was defendant, Deborah Tanner ("Tanner"). Defendant, Brent Villamarette ("Villamarette"), was the Director of Field Services for OCS.

1

In 2006, while still under the supervision of Woodensen, Becnel applied for a promotion within her clerical section to a payroll position. Woodensen quit prior to the position being filled, and the position was ultimately filled by Lillian Dickerson ("Dickerson"), another clerical employee who had not applied for the position but whom Dottery approached to fill the position. Becnel never interviewed for that position. She contends that her relationship with Dottery deteriorated after the position was filled.

In 2007, several positions within another clerical section under the immediate supervision of Andrell Coleman became available; however, Becnel contends that she did not apply for those positions because she believed her application would have been futile due to Dottery's personal feelings about her and due to Dottery having told her that she could not be promoted while in her probationary period.

On February 26, 2008, the Louisiana State Police ("LSP") was notified of a possible bomb threat at OCS. The threat was contained in three identically-typed letters that had been placed in the offices of supervisors, Dottery, Tanner, and Barbara Siemann. The letters were submitted for fingerprint analysis. During the course of the investigation, LSP detectives learned that Becnel's immediate supervisor, Smith, had been recently terminated and that the three recipients of the threatening letter had all been involved in the decision to terminate Smith. The detectives further learned that several employees who had worked under Smith's supervision were upset about his termination, including Becnel, who had written a letter to Villemarette concerning Smith's termination. Becnel was one of ten people who were ultimately interviewed in connection with the investigation between February 26, 2008 and May 21, 2008. The State Police were unable to identify any suspects and therefore administratively closed their investigation.

Two days after the bomb threat incident, on February 28, 2008, Becnel took leave for a medical disability. Over three (3) months later, by letter dated June 12, 2008, Villemarette requested that she to return to work by June 30, 2008 or produce a doctor's certificate to support additional leave.[1] In response, Becnel produced a physician's statement indicating that she would be able to return to work on July 22, 2008. Villemarette therefore authorized leave without pay through the close of business on July 21, 2008. However, Becnel did not report to work on July 22, 2008. On July 23, 2008, Villemarette received a fax transmittal from Becnel, containing another physician's statement dated July 22, 2008 that indicated that Becnel *could* return to work as well as a memo handwritten and signed by Becnel stating that she attempted to return to the office but that her anxiety prevented her from entering the building. Thereafter, Becnel did not report for work on July 24th, 25th, or 28th, 2008, nor did she call to request leave on those dates. *See*, R. Doc. 44-6.

On July 28, 2008, Villemarette wrote Becnel again, advising her that disciplinary action up to and including termination was being considered against her for the abandonment of her position as an Administrative Assistant 2 because of her continued absence from her position since February 28, 2008 despite having been allowed leave without pay through the close of business on July 21, 2008. Villemarette advised Becnel

---

[1] In that letter, Villemarette explained that, at the time Becnel was approved for family medical leave on March 4, 2008, she was advised that she would be required to furnish her supervisor with periodic reports of her status and intent to return to work, re-certification every thirty days relating to her health condition, and to present a fitness-for-duty certification prior to being restored to employment, as indicated in the Employer Response/Notification to Employee Form Becnel signed on March 5, 2008. According to Villemarette's letter, Becnel did not comply with any of those requirements, and as of June 6, 2008, she had not reported to work or spoken with anyone in her chain of supervision regarding her continued need to be on leave without pay. *See*, R. Doc. 44-6.

that several attempts had been made to contact her at her home number on record with Human Resources and at her cell number, which numbers were either disconnected or out of order. Villemarette explained that, if it was Becnel's intention to resign, he would accept her resignation; otherwise, she was required to report for duty. He requested that Becnel respond to the letter and explain why she should not be terminated and advised that, if she did not report for duty, resign, or otherwise respond by August 13, 2008, he would assume that she conceded that she wanted to desert her position, and he would proceed with termination. *See*, R. Doc. 44-6, p. 6-7.

On July 30, 2008, Villemarette sent Becnel another letter advising her that she was being dismissed from her position pursuant to Civil Service Rule 12.2, effective upon the close of business on August 7, 2008 for abandonment of her position because, in response to his July 28, 2008 letter, Becnel had sent a faxed response (dated July 29, 2008) advising that, even though her physician had released her to work, she was not going to report for duty and not going to resign. As a result, Villemarette indicated that he had no alternative but to conclude that she had deserted her position and to terminate her employment.

Becnel subsequently appealed Villemarette's action to the State Civil Service Commission. Ultimately, her dismissal was converted from a Civil Service Rule 12.2 disciplinary removal to a Civil Service Rule 12.6(a)(1) non-disciplinary removal. Such a non-disciplinary removal allowed Becnel to retain her re-employment eligibility in accordance with Civil Service Rules. Following Becnel's appeal, Villemarette sent Becnel a letter in November 2008 (which bears the incorrect date, July 30, 2008), wherein he confirmed that her termination was a non-disciplinary removal, which had become effective as of the close of business on August 7, 2008. Villemarette provided the following grounds

4

for Becnel's non-disciplinary removal:  (1) that, due to her medical disability, she had been on continuous leave since February 28, 2008, (2) that her FMLA entitlement had been exhausted on June 6, 2008, (3) that she was ineligible for a new FMLA entitlement at the time, (4) that she was presently unable to perform the essential functions of her job, and (5) that she had less than eight (8) hours of sick leave to her credit.  Villemarette further advised that, although Becnel's inability to return to work might be beyond her control, her duties as an Administrative Assistant 2 are critical to the functioning and mission of OCS, and her job needed to be performed without further interruption.  *See*, R. Doc. 44-6, p. 8-9.

While Becnel was on medical leave, she filed a charge of discrimination with the EEOC and was issued a right to sue letter dated June 18, 2008.  In responding to the charge, OCS clarified that Becnel was only claiming discrimination based upon "retaliation," which Becnel did not dispute in her response thereto.[2]  OCS further responded that, because it was unaware of Becnel having reported any discriminatory practices on the part of OCS, it had no reason to retaliate for such reporting by denying her promotions.

Becnel and Smith filed a single lawsuit against the defendants in this Court on September 17, 2008.  After being ordered to provide a more definite statement of their claims, they filed an amended complaint on February 27, 2009.[3]  In the amended complaint, Becnel alleges that, during her employment, she was subjected to discrimination and retaliation by her supervisor, Dottery, in that Dottery denied her the right to apply for

---

[2] In her response, Becnel concedes that OCS "is correct in stating that I was not discriminated against."  *See*, R. Doc. 44-9, p. 14.  She specifically states that what she was charging OCS with was "Whistleblower/Retaliation because [she] reported discrimination and harassment and was therefore retaliated against."  *Id.*  She indicates that she "was not discriminat[ed] against in that sense."  *Id.*

[3] The cases of Smith and Becnel were severed on November 12, 2009, and Smith's case proceeded separately as Civil Action No. 08-589-B-M2.

and/or to be promoted to positions for which she was qualified because Becnel threatened to file grievances against Dottery relative to Dottery's discriminatory and harassing conduct toward other OCS employees. Becnel also contends that another of her supervisors, Tanner, harassed and discriminated against her by releasing her name to the LSP for questioning as the "prime suspect" following the bomb threat incident at OCS. Becnel contends that she was the only employee out of 80 to 100 employees who was escorted out of the building and questioned by LSP. Becnel further contends that, when she received word on February 13, 2008, that Smith was terminated, she sent a letter on Smith's behalf to Villemarette in an effort at helping Smith "save his job," but she alleges that she was "singled out and humiliated" during the bomb threat incident in retaliation for writing that letter on Smith's behalf and because she threatened to go to Civil Service regarding the alleged conduct of Dottery and Tanner. Finally, Becnel contends that, as a result of the alleged acts of Dottery, Tanner, and their superiors, she became very ill and was unable to attend work; however, Villemarette sent her letters threatening to terminate her position as an Administrative Assistant 2 if she did not return to work on dates specified in the letters, rather than at a time when Becnel's doctor "felt was safe for her to return." As mentioned above, she was subsequently terminated by Villemarette. Becnel seeks damages from the defendants under Section 1983 for violations of the Fourth and Fourteenth Amendments; under Title VII for alleged harassment, retaliation, and discrimination; and under Louisiana state tort law for intentional infliction of emotional distress, defamation, and whistleblower violations.[4]

---

[4] In her amended complaint, Becnel seeks compensatory damages in the amount of $2.5 million and punitive damages in the amount of $5 million, in addition to costs and fees. *See*, R. Doc. 19, p. 11.

Defendants have filed the present motion for summary judgment seeking dismissal of Becnel's claims with prejudice on the basis that the record in this matter is devoid of any facts or evidence which, if proved or even inferred, would establish that they are liable for any act of retaliation in their dealings with Becnel.

## LAW & ANALYSIS

### I.      Summary judgment standard:

Summary judgment is appropriate where the pleadings, discovery products, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56(c).  A "genuine issue" exists when a reasonable jury could resolve the disputed fact(s) in favor of the non-movant, and a "material" fact is one that might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[5]  Only if the nonmoving party sets forth specific facts and evidence supporting the allegations essential to his/her claim will a genuine issue of material fact be found to exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[6]

### II.      Failure to exhaust Title VII discrimination and harassment claims:

---

[5] In reviewing a motion for summary judgment, a court " . . .must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

[6] The nonmoving party may not rely upon pleadings, conclusory allegations, unsubstantiated assertions or arguments alone, but instead must come forward with evidence based on personal knowledge that demonstrates the existence of a material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the record taken as a whole does not lead a rational trier of fact to find for the non-moving party, no genuine issue of material fact exists, and the mover is entitled to summary judgment as a matter of law.  *Id.*

The filing of an administrative complaint with the EEOC is a jurisdictional prerequisite to a Title VII action. *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995). A Title VII cause of action may be based upon the specific complaints made by the employee's EEOC charge as well as any kind of discrimination "like or related to" the charge's allegations, limited only by the scope of the EEOC investigation that "could reasonably be expected to grow out of the initial charges of discrimination." *Id.*; *Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir. 1990)(The scope of inquiry for this Court in a Title VII action is limited to the EEOC's investigation that can "reasonably be expected to grow out of" the charge of discrimination).

In her EEOC charge, Becnel only specifically complained of retaliation by the defendants. Furthermore, even if the scope of her EEOC charge was broadened by the narrative portion of that charge to include allegations of discrimination and/or harassment, there is no allegation within her EEOC charge that such discrimination and/or harassment was based upon any prohibited factor, such as age, race, disability, sex, or national origin. Accordingly, Becnel did not preserve and have reviewed by the EEOC any claims of impermissible discrimination or harassment, and those claims are therefore subject to dismissal for a failure to exhaust them through the administrative process.[7]

Additionally, Becnel's EEOC charge does not assert any claims relative to her termination since it was filed and she received her right to sue letter from the EEOC prior to her August 7, 2008 termination. Thus, the only claim that was exhausted before the EEOC is Becnel's retaliation claim relating to the alleged failure to promote her to positions

---

[7] Defendants are correct that Becnel cannot support a claim that she filed an EEOC charge based upon multiple forms of discrimination with the EEOC charge of James Smith or with her own self-serving, uncertified memorandum, which does not serve as competent summary judgment evidence.

for which she was allegedly qualified. Any claims concerning her termination do not reasonably grow out of her charge alleging a retaliatory failure to promote, and it therefore would not be expected that the EEOC would have considered claims relating to her termination.[8] Accordingly, any claims relating to her termination should likewise be dismissed for failure to exhaust before the EEOC prior to filing suit.

## III. Retaliation Claim:

In order to establish a *prima facie* case of retaliation, Becnel must prove that: (1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). Assuming that she makes such a showing, the burden shifts to OCS to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.*, at 557. If OCS satisfies that burden, Becnel bears the ultimate responsibility of proving that OCS's proffered reason(s) are a pretext for its true discriminatory/retaliatory motivation. *Id.*

### (A) Promotion denials:

---

[8] Even assuming Becnel could assert claims relating to her termination, defendants have set forth legitimate, non-discriminatory reasons for the removal of Becnel from her position as an Administrative Assistant 2, which she has failed to rebut. As Villemarette explained in his November 2008 correspondence to Becnel (incorrectly dated July 30, 2008), her removal from such position was due to the fact that she had been continuously absent from such position since February 28, 2008, that her FMLA entitlement had been exhausted on June 6, 2008, that she was ineligible for a new FMLA entitlement at the time, that she was unable to perform the essential functions of her job, and that she had less than eight (8) hours of sick leave to her credit. See, R. Doc. 44-6, p. 8-9. Even though Becnel's inability to return to work was allegedly due to medical reasons beyond her control, Villemarette explained that her duties were critical to the functioning and mission of OCS, and her job therefore needed to be performed without further interruption. Although Becnel contends that such reasoning by Villemarette is pretextual since the Administrative Assistant 2 position from which she was removed has not been filled since her removal (suggesting that her presence at work was not "critical"), defendants have presented the affidavit of Dottery with their reply memorandum, which indicates that Becnel's former position was not filled after her removal due to the state department's belief that the clerical section at the Baton Rouge OCS office was over-staffed. *See*, R. Doc. 58-1, ¶¶1-3. Furthermore, in August 2010, the clerical department in the DSS/OCS Baton Rouge office was reorganized and downsized to one department. *Id.*, ¶¶4-5.

Even assuming Becnel is able to establish her *prima facie* case of retaliation with respect to the payroll position for which she applied in 2006, the undersigned agrees with defendants that she will be unable to establish that the legitimate, non-discriminatory reason OCS has articulated for its decision not to promote her to that position is pretextual (*i.e.*, that such reason is not true and that the actual reason for its decision not to promote her is retaliation/discrimination).  OCS indicates that its decision not to promote Becnel to the payroll position in 2006 was based upon the fact that she was not eligible for that position because she was still on probationary status.  Becnel was hired by OCS on September 5, 2006; thus, when she applied for a position during that same year, she was still within her one year probationary period.[9]  Becnel has not presented any competent evidence to refute that non-discriminatory reason for OCS's decision.  Moreover, Becnel testified that her relationship with Dottery did not become strained until after Becnel was not interviewed or promoted to this position.  Thus, any personality conflicts with Dottery would not have been the basis for Becnel's failure to be promoted to the payroll position

---

[9] *See*, Letter from Assistant Secretary of OCS, Marketa Garner Gautreau, to Maple Thomas, Supervisory Investigator, U.S. Equal Employment Opportunity Commission, R. Doc. 44-8, p. 2, noting that The Civil Service HR Handbook, in the section of Staffing Considerations (Attachment 2), states that an employee must have permanent status (rather than probationary status) to be promoted.  Therefore, OCS had no authority to promote Becnel in 2006 while she was serving a probationary period.

Additionally, Becnel has misinterpreted her re-employment rights under Civil Service Rule 8.18.  Rule 8.18 provides that a former permanent employee, who has been separated from the classified service may, within ten years from separation, be non-competitively re-employed in any job for which he is qualified and which has the same or lower maximum salary as the current maximum for the job in which he had permanent status.  *See*, Civil Service Rule 8.18, R. Doc. 44-9, p. 9.  As defendants note in their reply memorandum, those re-employment rights do not result in a re-employed state worker being exempt from the probationary requirement set forth in Civil Service Rule 8.10.1.  Thus, even if Becnel had re-employment rights under Civil Service Rule 8.18, she still had a one (1) year probationary period when she was employed as an Administrative Assistant 2 on September 5, 2006 and could not be promoted during the one year period following that date.  She has not presented any competent evidence to the contrary.  Furthermore, although Becnel contends that other probationary employees at OCS were given the opportunity to apply for positions and were promoted, she has not produced any summary judgment evidence to support that assertion.

in 2006. Additionally, to the extent Becnel contends that defendants retaliated against her because she complained about discrimination against Smith, Smith was not even employed with OCS at the time that Becnel applied for the promotion in 2006.[10] Accordingly, Becnel could not have been denied the 2006 payroll position in retaliation for any complaints she expressed relative to Smith.

As to the positions that allegedly became available during 2007, Becnel cannot establish the second element of her *prima facie* case of retaliation. A plaintiff cannot establish that the denial of a promotion is an "adverse employment action" if he/she never applied for the position at issue.[11] During her deposition, Becnel testified that she is familiar with the civil service website, where open positions at OCS are advertised, and with completing employment applications on that website. Yet, she did not apply for any promotions that allegedly became available at OCS during 2007. Her own self-serving allegation that the reason she did not apply for such positions is because she thought it was futile due to Dottery's personal feelings about her and due to the fact that Dottery had told her she could not apply because of her probationary status[12] is insufficient to carry her burden of proof in opposition to defendants' motion for summary judgment.[13]

---

[10] *See*, *Smith v. State*, Civil Action No. 08-589-B-M2, R. Doc. 40-1 and attached exhibits, indicating that Smith did not begin his employment with OCS until on or about February 12, 2007.

[11] *Milford v. New York City Bd. of Health*, 2005 WL 195561, *7 (E.D.N.Y. 2005); *Nails v. England*, 311 F.Supp.2d 116 (D.D.C. 2004)(Plaintiff did not establish that she suffered an adverse employment action based upon denial of promotions, as required for her prima facie case of discrimination or retaliation under Title VII based upon a failure to promote, absent any evidence that she had ever applied for the promotions).

[12] *See,* Becnel's deposition, Exhibit B to defendants' motion, pp. 40, 42, 45-46.

[13] *Mayberry v. Tarrant County Community Supervision & Corrections Dept.*, 2002 WL 663713 (5th Cir. 2002)(holding that "a subjective belief of discrimination" is insufficient to support a discrimination or retaliation claim where "it alone st[ands] against unimpeached and uncontradicted opposing testimony");

Furthermore, during her deposition, Becnel could not testify as to exactly when the positions in question became available in 2007. In fact, in her opposition to the present motion, she states that she "had been employed with OCS for almost a year when the 2007 positions beca[me] available;" thus, based upon her own concession, it appears that her one year probationary period was still running at the time that the 2007 positions came open for application. See, R. Doc. 44-4, p. 21. Moreover, she has not specifically referred to any position that became available after her probationary period expired to which she was denied application/promotion. Thus, the fact that Dottery may have told Becnel, on several occasions, that she could not apply for the open positions in 2007 because of her probationary status does not appear to be inaccurate.[14]

Even assuming Dottery's statement was inaccurate as to one or more of the promotions in 2007, Becnel testified that she had contacted Civil Service and had been informed that she could apply for the open positions because of her prior state employment

_____

*Reine v. Honeywell Intern., Inc.*, 2010 WL 271352 (5th Cir. 2010)(Plaintiff's subjective belief and conclusory allegations of retaliation are insufficient to demonstrate pretext, and the plaintiff therefore did not meet her initial burden of proving retaliation)

[14] Additionally, Becnel's PPRs that were completed by Dottery in 2007 and 2008 do not suggest retaliation on the part of OCS. In both Becnel's 2007 PPR, which Becnel signed, and her 2008 PPR, which Becnel refused to sign (on the basis that Dottery had not supervised her long enough to render a PPR and on the basis of her "conflict of interest" with Dottery), Dottery rated Becnel as "meet[ing] [the] requirements" of her job and recommended that Becnel receive merit increases. Although Dottery noted issues with Becnel's "dependability" in the 2008 PPR that Becnel refused to sign, essentially the same issues had been noted in the 2007 PPR prepared by Dottery as well as an additional 2007 PPR prepared by Smith, both of which Becnel had signed without any appeals/disputes. See, R. Doc. 58-3, 58-4, and 58-5. Dottery also attests in her affidavit that, contrary to Becnel's assertion, she was aware of Becnel's work performance for purposes of the 2008 PPR through: personal observation of Becnel in the unit; day-to-day interaction with the clerical unit, including Becnel, as the indirect supervisor over clerical; and direct supervision over the clerical unit, including Becnel, following Smith's termination. According to Dottery, at the time of the 2007-08 PPRs, the clerical unit was a small unit, and she was aware of each clerical employee's general work performance, including that of Becnel. See, R. Doc. 58-1, ¶¶17-19.

and that her supervisor could not stop her from applying for the positions.  *See*, R. Doc. 44-7, p. 33.  Accordingly, any animosity between Becnel and Dottery (and/or any statements Dottery may have made to Becnel about the application process) should not have prevented Becnel from completing employment applications on the civil service website, and since Becnel failed to apply, her claims of a retaliatory failure to promote relating to those positions should be dismissed.[15]

### (B)    Bomb Threat Investigation:

As discussed above, relative to the bomb threat investigation, Becnel contends that the defendants retaliated against her by "singl[ing her] out and humiliat[ing] her" during the investigation by LSP, in that she was the only employee out of 80 to 100 employees who was escorted out of the building and questioned by LSP on the day of the incident.  It has been specifically held, however, that mere questioning related to an investigation of wrongful conduct does not rise to the level of an adverse employment action for purposes of a retaliation claim, when the plaintiff does not submit any competent evidence that the questioning was oppressive.[16]  Furthermore, an employee's subjective belief that being

---

[15] Although Becnel contends that an employee by the name of Queenat Young "came from another State agency but was not a permanent state worker and . . . was allowed to promote," defendants have provided legitimate, non-discriminatory reasons for Young's promotion, which Becnel has failed to refute.  Specifically, contrary to Becnel's assertion, defendants have presented the affidavit of Dottery, which indicates that Young transferred from another DSS/OCS office located in a different parish, that she did not separate from DSS/OCS employment prior to coming to the OCS parish office in Baton Rouge, that Young's probationary period continued with her transfer, and that Young was not promoted during her probationary period.  *See*, R. Doc. 58-1, p. 2, ¶16.  Dottery's affidavit further provides that Young was detailed to another position during her probationary period, which is not contrary to civil service rules and which was specifically approved by the human resources department.  *Id.*

[16] *Dilettoso v. Potter*, 2006 WL 197146 (D.Ariz. 2006); *Schamann v. O'Keefe,* 314 F.Supp.2d 515 (D.Md. 2004)(holding that no adverse employment action occurred which could be the basis of a Title VII retaliation claim where investigators from an agency's office of the inspector general interviewed the plaintiff/employee about the activities of a third party and did not indicate that the plaintiff was doing anything improper).

interviewed or targeted during an investigation might lead to administrative or criminal action against him is insufficient to create a genuine factual dispute as to whether the interview constitutes an adverse employment action. *Id.*, at 530, citing *Page v. Bolger*, 645 F.2d 227, 233 (C.A.Va. 1981)(speculation of future harm can hardly be considered an "ultimate employment action") and *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995)("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion").[17]

Moreover, Becnel's subjective belief that the LSP bomb threat investigation "targeted" her or "singled her out" does not appear to be supported by the record. The evidence presented by the defendants indicates that the LSP interviewed ten (10) people

---

[17] Although Becnel contends that she was arrested in connection with the bomb threat incident, there is no evidence to support that contention. The evidence instead indicates that she was interviewed in connection with the investigation by the state police and that no one was ever charged or arrested in relation to the incident since the police were unable to identify any suspects.

Additionally, although Becnel contends the letters that Villemarette sent to her, concerning her return to work after her FMLA leave expired, constituted an adverse employment action because such letters were "threaten[ing,]" the undersigned finds to the contrary. The letters were sent by Villemarette initially in an effort to find out when Becnel would be returning to work and to obtain the requisite documentation from her physicians to allow her to do so. Later, when Becnel continued to be absent from work even though she had exhausted her FMLA leave and had failed to submit the requested documentation to OCS to allow her to continue her medical leave, Villemarette's letters advised her of her options and of the possible actions that OCS was going to take relative to her. The tone of Villemarette's letters was not threatening and appears to have allowed Becnel every feasible opportunity to retain her position. When she failed to return to work for several days after her extended leave without pay expired and after several efforts had been made to contact her to determine whether she was abandoning her position, Villemarette terminated her employment.

Finally, Becnel asserts that Tanner accused her of "stealing time" in front of one of her co-workers, and such action was an "adverse employment action." The Fifth Circuit has specifically held that verbal reprimands and accusations, without more, do not constitute adverse employment action. *Mylett v. City of Corpus Christi*, 2004 WL 962905, **2 (5th Cir. 2004), citing *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998)(Supervisors' alleged actions of falsely accusing police department employee of stealing criminal history records, and falsely accusing second police department employee of attempting to sabotage fingerprint identification system, did not constitute "adverse employment actions"); *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 197)(holding that mere criticism did not constitute an adverse employment action).

during the investigation but were unable to identify any suspects. There is no evidence before the Court to suggest that Becnel's questioning relative to the investigation was oppressive or improper or that any disciplinary or criminal action occurred relative to her as a result of the investigation. Accordingly, the undersigned does not find that the LSP's questioning of Becnel constituted an adverse employment action.[18]

Additionally, an employer has a right to communicate with its employees and to investigate suspected wrongdoing without becoming liable for retaliation or defamation. Such communications and investigations are not considered adverse employment actions if they are not deemed "outside the range" of what a "reasonable manager [or employer] would do."[19] OCS acted reasonably in contacting LSP to conduct an investigation of what appeared to be a bomb threat that had been made, via letters, to three different OCS supervisors. To the extent defendants revealed information to LSP that Smith had been recently terminated, that several employees who had worked under his supervision, particularly Becnel, were upset about his termination, and that Becnel authored a letter in support of Smith that was sent to Civil Service and Villamarette, such statements appear

---

[18] *See, Schamann*, at 530 (similarly holding that the record did not support the plaintiff's subjective belief that the OIG investigation "targeted" him. The plaintiff acknowledged that the OIG investigators were looking into activities of a paid lobbyist working on plaintiff's contract, that OIG did not indicate that plaintiff was doing something improper, and that no disciplinary or criminal action occurred as a result of the investigation).

[19] *See, See, Walters v. County of Maricopa, Ariz.*, 2006 WL 2456173, *15 (D.Ariz. 2006)(Managers have some investigatory discretion under the First Amendment); *Waters v. Churchill*, 511 U.S. 661, 678 (1994)("[T]here will often be situations in which reasonable employers would disagree about who is to be believed, or how much investigation needs to be done, or how much evidence is needed to come to a particular conclusion. In those situations, many different courses of action will necessarily be reasonable. Only procedures outside the range of what a reasonable manager would use may be condemned as unreasonable"); *Malik v. Carrier Corp.*, 202 F.3d 97, 106 (2nd Cir. 2000)(noting that the employer's duty to investigate harassment complaints is not subordinated even to the victim's desire to let the matter drop); *McDonnell v. Cisneros*, 84 F.3d 256, 261 (7th Cir. 1996)(refusing to interpret the law in a way that would punish employers for undertaking serious investigations into sexual harassment claims, even when such an investigation "oversteps the proper bounds").

reasonably connected to an investigation of discontent in the workplace. Furthermore, defendants are entitled to a qualified or conditional privilege with respect to such communications because they were made during the course of an investigation following a report of possible employee wrongdoing, and such communications were passed to persons having an interest or duty in the matter to which the communications relate (*i.e.*, LSP, who was conducting an official investigation of the bomb threat incident, and possibly knowledgeable employees, whom defendants were seeking to protect through a thorough investigation of the incident).[20] [21]

Becnel has not demonstrated that any of the above information that defendants communicated to LSP was untrue, inaccurate, or reported in bad faith or out of actual malice or reckless disregard for the truth. Instead, she has simply produced conclusory, self-serving statements that the defendants maliciously planned the entire bomb threat incident and "set her up" in order to retaliate against her for reporting alleged discrimination within OCS and mistreatment of Smith and other employees. Because there is no competent evidence supporting her "set up" theory, she will be unable to defeat the

---

[20] Such privilege "arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicator will be held liable in damages if the good faith communication later proves to be untrue or inaccurate." *Ward v. Sears, Roebuck & Co.*, 339 So.2d 1255, 1261 (La.App. 1 Cir. 1976).

[21] *See, Amezquita v. Beneficial Texas, Inc.*, 2008 WL 276279, **3 (5th Cir. 2008)(Employer's communication to company that handled unemployment compensation describing an incident during which employee allegedly placed chair against break room door to prevent door from being opened was privileged and therefore did not support a defamation claim against the employer by implying that employee committed a crime; the employer sent the communication only to a company who had an interest in the outcome of the investigation, and there was no evidence indicating that the employer misreported what he was told about the incident or that he knew what he reported was false).

qualified or conditional privilege applicable to the actions and communications that the defendants took in connection with the bomb threat incident.[22]

Finally, the undersigned finds that defendants should not be held liable for retaliation relative to the way the bomb threat investigation was conducted because they did not control how that investigation was conducted; the LSP did. If the type and manner of questioning to which Becnel was subjected was oppressive or improper, such conduct is attributable to LSP (who is not a defendant in this litigation) and cannot be imputed to defendants. Accordingly, Becnel's retaliation claim relative to being allegedly "singled out" during the bomb threat investigation should be dismissed.

## IV.    Section 1983 claims:[23]

### (A)    Fourth Amendment claim:

The Fourth Amendment protects against "unreasonable searches and seizures" affecting the security of people's "persons, houses, papers, and effects." U.S. Const. Am. IV; *U.S. v. Scroggins*, 599 F.3d 433 (5th Cir. 2010). Becnel contends that her Fourth Amendment rights were violated in connection with the bomb threat investigation. She

---

[22] *See, Amezquita*, at **3 (The privilege may be defeated by proof that the statement in question was made with actual malice, which occurs "when the statement is made with knowledge of its falsity or with reckless disregard as to its truth"); *Williams v. K-Mart Corp.*, 1992 WL 396339 (D.Kan. 1992)(holding that a statement about a plaintiff made by an employee of the defendant in the course of investigating or preventing what the employee in good faith believes to be a crime against his employer is subject to a qualified privilege); *Rouly v. Enserch Corp.*, 1987 WL 8454 (E.D.La. 1987)(citing various Louisiana cases)("Under similar circumstances in which employers have investigated possible misconduct by employees, Louisiana courts have held communications among those persons involved in such investigations subject to the qualified privilege").

[23] The Eleventh Amendment bars Section 1983 suits for money damages in federal court by citizens of a state against their own state, state agency or department, and state officials in their official capacities. *Wallace v. Texas Tech University*, 80 F.3d 1042 (5th Cir. 1996). Thus, Becnel's Section 1983 claims against OCS and against the individual defendants in their official capacities are subject to dismissal based upon Eleventh Amendment immunity. Her claims against the individual defendants in their personal capacities, however, are not subject to that immunity bar.

asserts that the defendants are liable not only for the way that the bomb threat investigation was carried out but also because they "set [the] entire crime up against the plaintiff because she reported the unlawful [discriminatory/harassing] acts to civil service that was [sic] being committed by supervisors and allowed."  As mentioned above, the manner in which the bomb threat investigation and questioning was conducted was not controlled by defendants but was instead carried out and controlled by LSP.  While the defendants may have provided LSP with certain information to assist in the investigation, the provision of such information can in no way be considered a violation of Becnel's Fourth Amendment rights.  Moreover, Becnel has produced no competent evidence supporting her speculative assertion that the bomb threat incident was a scheme conjured up by the defendants to "set [her] up" in retaliation for her having made reports about allegedly unlawful discriminatory/harassing conduct on their parts.  Thus, because Becnel has failed to present evidence supporting a viable Fourth Amendment claim, such claim should also be dismissed.

**(B)    Fourteenth Amendment claim:**

Becnel has not specified precisely how the defendants' conduct violated her Fourteenth Amendment rights.  The undersigned, like defendants, assumes that she is asserting an Equal Protection claim relating to the same allegations that support her Title VII claim.  For the same reasons that her Title VII retaliation claim fails, her Section 1983 retaliation allegations likewise fail.  Moreover, to the extent Becnel is attempting to assert her discrimination and harassment allegations via Section 1983 and to circumvent the

administrative prerequisites of Title VII, that is not permissible, and her Section 1983 claims for discrimination and harassment should therefore be dismissed.[24]

## V.    Defamation:

The elements of a defamation claim under Louisiana law are:  (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.  *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164 (5th Cir. 2009).  For the reasons discussed above relative to Becnel's retaliation claim concerning the bomb threat incident, she cannot carry her burden of proof on her state law defamation claim.  She has not demonstrated that any of the comments concerning her that defendants made in connection with that investigation are false, that such communications are unprivileged, or that they were made negligently or with malice or reckless disregard for the truth.  She has not presented sufficient evidence that the defendants' comments made in the course of that investigation stemmed from anything other than their legitimate interest in having possible criminal activity brought to the attention of and investigated by law enforcement authorities.

## VI.    Workers' compensation bar - mental injury claim:

In her opposition to the present motion, Becnel indicates that the event resulting in her alleged inability to work and her purported mental injuries was the February 26, 2008

---

[24] *See, Arrington v. Cobb County*, 139 F.3d 865 (11th Cir. 1988)(A plaintiff may not use Section 1983 to circumvent the administrative prerequisites for Title VII actions); *Arvinger v. Mayor & City Council of Baltimore*, 811 F.Supp. 1121 (D.Md. 1993)(Courts note that it would frustrate the intent of Title VII to allow a plaintiff to circumvent Title VII's administrative and procedural framework by bringing to federal court a Section 1983 suit based solely upon an alleged violation of Title VII).

bomb threat incident and related investigation.[25] She filed a worker's compensation claim in connection with that incident. See, R. Doc. 58-1, ¶9; R. Docs. 58-1 and 58-2. Pursuant to La.R.S. 23:1032, worker's compensation is Becnel's exclusive remedy against the defendants with respect to that alleged work-related mental injury unless that injury resulted from an intentional act. *See*, La.R.S. 23:1032; *Wells v. City of Alexandria*, 2004 WL 909735 (5th Cir. 2004). An employer acts intentionally if he "1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or 2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Id.*, at *2, quoting *Reeves v. Structural Preservation Sys.*, 731 So.2d 208, 211 (La. 1999)(internal quotation marks omitted).

Becnel has not presented any direct evidence that OCS, through Villemarette, Dottery, Tanner, Siemann, or any other employee, consciously desired her to suffer mental injuries as a result of the bomb threat investigation (*i.e.*, that they "set her up" in connection with that incident as she contends) or that they knew her mental injuries were substantially certain to follow. To the contrary, as discussed above, defendants have presented evidence that LSP was contacted to investigate what was believed to be a legitimate bomb threat and that the state police conducted a routine investigation that involved interviewing ten (10) witnesses and performing a fingerprint analysis. There is no competent evidence indicating that the defendants controlled how the investigation was conducted by state police. Thus, the intentional act exception to the exclusive remedy of worker's

---

[25] *See also*, Becnel's deposition, p. 125, R. Doc. 44-7 (wherein she agrees that the main reason she brought this lawsuit relates to the bomb threat incident and the manner in which the State Police handled it and her belief that OCS was involved in the manner in which the investigation was handled).

compensation does not apply in Becnel's case, and her claims relating to her alleged work-related mental injuries should therefore be dismissed.

## V. Whistleblower claim:

La. R.S. 23:967, the Louisiana Whistleblower Statute, prohibits an employer from taking reprisal against an employee who, in good faith, and after advising the employer of violation of law, objects or refuses to participate in an employment practice that is in violation of law. La. R.S. 23:967. That statute requires that an employee prove an actual violation of *state* law in order to prevail. *Price v. B&B Transport Services, Inc.*, 2006-1482 (La.App. 1 Cir. 5/4/07), 2007 WL 1300932 (citing other Louisiana state appellate court decisions holding similarly); *Wells v. City of Alexandria*, 2004 WL 909735 (5th Cir. 2004). Furthermore, an employee's reasonable belief that an employer's acts or practices are unlawful is insufficient to state a claim under La. R.S. 23:967. *Puig v. Greater New Orleans Expressway Comm'n*, 2000-924 (La. App. 5th Cir. 10/31/00), 772 So.2d 842, *writ denied*, 2000-3531 (La. 3/9/01), 786 So.2d 731. Because Becnel has not specifically alleged that the defendants violated any state law in connection with their actions in this suit, this claim is also subject to dismissal.

## RECOMMENDATION

For the above reasons, it is recommended that the Motion for Summary Judgment (R. Doc. 46) filed by the defendants, Department of Social Services, Office of Community Services; Brent Villamarette, in his individual and official capacities; Peggy Dottery, in her individual and official capacities; and Deborah Tanner, in her individual and official

capacities, should be **GRANTED**, that the claims of plaintiff, Kiease Becnel, should be

**DISMISSED WITH PREJUDICE**, and that judgment should be entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, May 20, 2011.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**